**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| | | |
|---|---|---|
| **YOEL WEISSHAUS,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 3:22-cv-494** |
| | § | |
| **STEVE COY TEICHELMAN, and** | § | |
| **100th JUDICIAL DISTRICT,** | § | |
| | § | |
| *Defendants.* | § | |

<u>**PLAINTIFF'S ORIGINAL COMPLAINT**</u>

Respectfully submitted,

*/s/ Scott H. Palmer*
SCOTT H. PALMER,
Texas Bar No. 00797196

*/s/ James P. Roberts*
JAMES P. ROBERTS,
Texas Bar No. 24105721

SCOTT H. PALMER, P.C.
15455 Dallas Parkway, Suite 540
Addison, Texas 75001
Telephone: 214.987.4100
Facsimile: 214.922.9900
scott@scottpalmerlaw.com
james@scottpalmerlaw.com

COUNSEL FOR PLAINTIFF

1

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

COMES NOW, Yoel Weisshaus, complaining of, STEVE COY TEICHELMAN, and the 100th JUDICIAL DISTRICT, and for causes of action will respectfully show unto the Court as follows:

"[A] detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop, unless further reasonable suspicion, supported by articulable facts, emerges."

*United States v. Brigham*, 382 F.3d 500, 507 (5th Cir.2004).

## SUMMARY

On March 2, 2020, Defendant Officer Steve Coy Teichelman employed with the 100th Judicial District Traffic Enforcement Division conducted a traffic stop on Plaintiff Yoel Weisshaus. Defendant Teichelman informed Mr. Weisshaus that the purpose for the stop was speeding and displaying an obscured license plate/registration insignia. After running Mr. Weisshaus's information, Defendant Teichelman returned Mr. Weisshaus's driver license, issued him a citation, and informed him that he was free to leave.

Then, even though the purpose for the stop had concluded, Defendant Teichelmen illegally prolonged the detention by detaining Mr. Weisshaus and searching his vehicle. Absent reasonable suspicion, Defendant Teichelman's extension of the traffic stop violated Mr. Weisshaus's Fourth Amendment rights under the United States Constitution to be free from unreasonable search and seizure as well as illegal detention.

Defendant Teichelman conducted this unconstitutional detention in violation of Mr. Weisshaus's rights pursuant to the 100th Judicial District's practice of prolonging traffic stops past when the purpose for the stop has concluded in order to illegally detain and search citizens and subject them to civil forfeiture proceedings.[1]  Upon information and belief, this practice was put into place by Luke Inman, who created the 100th Judicial District Traffic Enforcement Division for the purpose of profiting off of traffic stops.

---

[1] Article 59.01 of Code of Criminal Procedure.

## I.
## PARTIES

1.      At all relevant times, Plaintiff Yoel Weisshaus was a resident of New Milford, New Jersey.

2.      Defendant, Steve Coy Teichelman (referred hereinafter as "Teichelman"), is an individual residing in Carson, County, Texas who at all relevant times was an officer employed with the 100th Judicial District Traffic Enforcement Division. He may be served at his place of employment at the 100th  Judicial District Traffic Enforcement Division located at 800 West Avenue, Box 1, Wellington, Texas 79095 or wherever he may be found. Defendant Teichelman is being sued in his individual capacity.

3.      Defendant 100TH Judicial District (referred herein after as the "District") acted at all relevant times under color of state law. It may be served through District Attorney Luke Inman at his place of employment located at the 100th Judicial District Attorney's Office 800 West Avenue, Box 1, Wellington, Texas 79095.

## II.
## JURISDICTION AND VENUE

4.      The Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343 since Plaintiff is suing for relief under 42 U.S.C. § 1983. Venue is proper in the Northern District of Texas pursuant to 28 U.S.C. § 1391 because the Defendants are domiciled and/or reside in the Northern District of Texas, and all or a substantial part of the causes of action accrued in the Northern District of Texas.

## III.
## FACTS AND ALLEGATIONS

5.      Luke Inman is the District Attorney for the 100th Judicial District.

6.    Upon information and belief, Luke Inman created the 100th Judicial District's Traffic Enforcement Division, which employs law enforcement officers who conduct traffic stops with the goal of seizing property, currency, and contraband to be forfeited over to the 100th Judicial District.

7.    On March 2, 2020, Plaintiff Yoel Weisshaus drove through Texas en route from Oklahoma to Arizona.

8.    During this trip, Defendant Steve Coy Teichelman, an officer working for the 100th Judicial District Traffic Enforcement Division conducted a traffic stop on Mr. Weisshaus and passenger Sasha Lee.

9.    The alleged purpose for the traffic stop was speeding and displaying an obscured license plate/registration insignia.

10.    Defendant Teichelman requested to see Mr. Weisshaus' driver's license and registration which Mr. Weisshaus provided.

11.    Defendant Teichelman requested that Mr. Weisshaus step out of his vehicle and follow him to his patrol vehicle while Teichelman processed a warning.

12.    Defendant Teichelman instructed Mr. Weisshaus to sit in the front seat of his patrol vehicle while he printed out a warning.

13.    Below is a screen shot of the warning Defendant Teichelman gave Mr. Weisshaus for speeding and displaying an obscured license plate/registration insignia.

**100TH JUDICIAL DISTRICT ATTORNEY'S OFFICE**

Wellington, Texas

| Day/Date/Time Of Contact: 3/02/2020 8:31 AM | CCDB: -- -- | Case # If Applicable: -- -- | Citation #: DA 06821 |
|---|---|---|---|
| Address/Location Direction Of Travel Of Contact: 112 mile marker | | County: Carson | Result Of Stop/Contact: WRITTEN WARNING |
| Alleged Offense/Reason For Stop - Initial Violation: Speeding | | | |

| VIOLATION(S) |
|---|
| 1. ***WARNING*** Speeding |
| 2. ***WARNING*** Display Fictitious, Altered, or Obscured License Plates/Registration Insignia |
| 3. |

| Alleged Speed: -- -- | Speed Limit: 75 | School Zn: No | Cnstr Zn: No | Workers: No | Accidents: No | Traffic: -- -- | Road Cond.: Dry | Day/Night: Day | Radar Cal: Yes | Video Used: Yes |
|---|---|---|---|---|---|---|---|---|---|---|

| PERSON INFORMATION |
|---|
| Name (Last, First, Middle): WEISSHAUS, YOEL |
| Address: 235 MILFORD AVE APT 2E, NEW MILFORD, NJ 07646 |

| Race: White | Ethnicity: Not Hispanic | Race/Ethnicity Known: No | Gender: Male | Height: -- -- | Weight: -- -- | Hair: -- -- | Eyes: -- -- | Build: -- -- |
|---|---|---|---|---|---|---|---|---|
| Complexion: -- -- | Date Of Birth: | ID / DX #: | | State: TX | DL Class: D | CDL: No | Social Security #: | |
| Telephone: | | Place Of Employment: | | | | Work Phone: | | |

| Contact: Driver | Person Search: No | Search Type: -- -- | | Contraband: -- -- | Type Of Contraband: -- -- | Use Force/Bodily Injury: No | |
|---|---|---|---|---|---|---|---|
| Facts Supporting Search and Document Any Evidence Located: -- -- | | | | | | | |

| VEHICLE INFORMATION |
|---|
| YEAR: 2016 | MAKE: JEE | MODEL: HER (EXPLAIN IN NARRATI | TYPE: -- -- | COLOR: -- -- |

| LICENSE #: A35KUV | STATE: NJ | EXP/YEAR: 2020 | Occupants: 1 | Commercial: No | OVER?: -- -- | Interlock: No | Hazmat: No | Hazmat Plac.: -- -- |
|---|---|---|---|---|---|---|---|---|
| Owner/Lessee: WEISSHAUS, YOEL | | | | | VIN: ZACCJBBT2GPD60985 | | | |

| Vehicle Search: No | Search Type: -- -- | Contraband: -- -- | Type Of Contraband: -- -- |
|---|---|---|---|
| Facts Supporting Search and Document Any Evidence Located: -- -- | | | |

Aide Wes: -- --

| **ISSUED BY:** | Coy Teichelman | I.D.#: | 8104 |
|---|---|---|---|
| -- -- | | | |

| ON OR BEFORE | -- -- | AT | |
|---|---|---|---|

THIS IS NOT A PLEA OF GUILTY, ONLY A PROMISE TO APPEAR

SIGNATURE:

| OFFICER NOTES |
|---|

| First Noticed | | Why Noticed | | | Light Conditions | | Direction Of Travel | | |
|---|---|---|---|---|---|---|---|---|---|
| Type Of District | Clocked 0 mPh | | From | To | Highway Surface | Wearing? No | Number Of Cars Passed 0 | Number Of Children 0 |
| Number Of Traffic Lanes 0 | Divided? No | Drinking? No | Test Results | Number Of Passengers 0 | Current Safety Sticker No | Highway Conditions | Accident Involved? No | Severity |
| Traffic Conditions | Roadway Type State Highway | Roadway Character | Location Stopped | Report Made By Coy Teichelman | | Witness |
| | | | Additional Information | | | |

| Page 1 of 1 | | Printed on 10/14/2020 12:04:05PM |
|---|---|---|

14. This warning demonstrates that Mr. Weisshaus was not suspected of any other crimes during the course of the traffic stop.

15. Defendant Teichelman informed Mr. Weisshaus that he was free to leave after handing Mr. Weisshaus the warning and returning his driver's license.

16.     At this point the purpose for the stop had ended and there was no longer a legal reason for Defendant Teichelman to detain Mr. Weisshuas.

17.     However, Defendant Teichelman then asked Mr. Weisshaus if he would consent to a search of his vehicle.

18.     Mr. Weisshaus, knowing his rights and choosing to exercise them, declined to give consent for a search of his vehicle.

19.     Defendant Teichelman informed Mr. Weisshaus that under Texas law, if a dog alerts to narcotics in a vehicle, there would be probable cause to search without consent.

20.     Mr. Weisshaus again declined to give consent for a search of his vehicle.

21.     Defendant Teichelman directed Mr. Weisshaus not to leave as he walked his K9 unit around Mr. Weisshaus' vehicle.

22.     Defendant Teichelman did not have facts giving rise to reasonable suspicion that a crime had been committed by Mr. Weisshaus of which evidence would be found inside of the vehicle, as the initial reason for the stop was due to traffic violations which Defendant Teichelman had just given Mr. Weisshaus a warning and Mr. Weisshaus had committed no criminal violations while in the presence of Defendant Teichelman.

23.     Despite there being no legal reason for the continued detention, Mr. Weisshaus was forced to remain on the side of the road while Defendant Teichelman walked a K9 around his vehicle.

24.     The K9 neither sat, barked, or stopped to indicate there was a positive alert for drugs.

25.     This is because there were no illegal narcotics inside of the vehicle.

26.     However, Defendant Teichelman returned the K9 to the police cruiser and stated that the dog alerted to drugs inside Mr. Weisshaus' vehicle.

27.     Defendant Teichelman then proceeded to perform a search of Mr. Weisshaus's vehicle.

28.     During the search, Defendant Teichelman ripped out the lining of the seats of Mr. Weisshaus' vehicle and tossed out the luggage of Mr. Weisshaus and Ms. Lee.

29.     After the search of Mr. Weisshaus's vehicle did not turn up any illegal contraband, Defendant Teichelman insisted on patting Mr. Weisshaus down.

30.     Mr. Weisshaus declined to be patted down.

31.     Mr. Weisshaus asked to leave.

32.     Defendant Teichelman told Mr. Weisshaus he was detained for refusing to comply with his orders.

33.     Mr. Weisshaus had not refused to comply with orders but had simply verbally declined the illegal search Defendant Teichelman was attempting to perform on Mr. Weisshaus' person.

34.     Only then when Mr. Weisshaus asked to leave for a third time did Defendant Teichelman allow Mr. Weisshaus to leave.

35.     The entire encounter lasted approximately twenty minutes.

36.     At all times relevant to this suit, Defendant Teichelman was employed with the 100th Judicial District Traffic Enforcement Division and acting under the color of law as he performed the traffic stop with his department issued vehicle and the search with his department issued K9.

## Asset Forfeiture

37.     Chapter 59 of the Texas Code of Criminal Procedure governs civil forfeiture actions, which are *in rem* proceedings against contraband. Tex. Code Crim. Proc. Ann. art. 59.05(e); *State v. Silver Chevrolet Pickup*, 140 S.W.3d 691, 692 (Tex. 2004, per curiam), citing *Hardy v. State*, 102 S.W.3d 123, 126–27 (Tex. 2003).

38.      Contraband is defined as "property of any nature" that is used or intended to be used in the commission of certain enumerated felonies. Tex. Code Crim. Proc. Ann. art. 59.01(2); see also *Silver Chevrolet Pickup*, 140 S.W.3d at 692.

39.     The State bears the burden to prove probable cause for the seizure. $56,700 in *US Currency v. State*, 730 S.W.2d 659, 661 (Tex. 1987), citing Tex. Const. art. I, § 9; U.S.C.A. Const. Amend. 4.

40.     Probable cause in this context means "a reasonable belief that 'a substantial connection exists between the property to be forfeited and the criminal activity defined by the statute." $*56,700 in US Currency*, 730 S.W.2d at 661.

41.     The Texas Supreme Court has stressed the importance of the connection between the at-issue property and the alleged criminal activity. "It is that link, or nexus, between the property to be forfeited and the statutorily defined criminal activity that establishes probable cause, without which the State lacks authority to seize a person's property." $*56,700 in US Currency*, 730 S.W.2d at 661; citing Tex. Const. art. I, § 9.

42.     According to Article 59 of the Texas Code of Criminal Procedure, all forfeited property shall be administered by the attorney representing the state, acting as the agent of the state, in accordance with accounting practices and with the provisions of any local agreement entered into between the attorney representing the state and law enforcement agencies. Tex. Code Crim. Proc. Ann. art. 59.06 (a).

43.    The proceeds of forfeited property may be used for the official purposes of the District Attorney's office or solely for law enforcement purposes. Tex. Code Crim. Proc. Ann. art. 59.06 (c).

## 100th Judicial District's Practice of Unconstitutional Searches and Seizures

44.    Upon information and belief, the 100th Judicial District Traffic Enforcement Division has a practice and custom of profiting off civil forfeiture actions instituted against citizens under Article 59.01 of the Texas Code of Criminal Procedure regarding property illegally seized after conducting unconstitutional searches during illegally prolonged detentions and without probable cause or consent to search.

## The Asset Forfeiture Agreements

45.    Defendant Luke Inman in his capacity as "Attorney Representing the State," for the 100th Judicial District entered into agreements with law enforcement in surrounding counties including Childress, Collingsworth, Donley, Hall, Randall, and Potter Counties for the purpose of profiting off civil forfeiture actions instituted against citizens under Article 59.01 of the Texas Code of Criminal Procedure.

46.    Defendant Inman entered into Asset Forfeiture Agreements with surrounding counties in "mutual consideration of the quotable sharing value of the contraband and the contraband itself, seized pursuant to appropriate state statutes."

47.    The purpose of these agreements was for the 100th Judicial District to profit off law enforcement seizures in the counties within the 100th Judicial District.

48.    Below is a screen capture of an Asset Forfeiture Agreement Defendant Inman entered into with surrounding counties.



**OFFICE OF THE 100TH JUDICIAL DISTRICT ATTORNEY**

LUKE M. INMAN
DISTRICT ATTORNEY

**LOCAL AGREEMENT**

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF CARSON | § |

This Local Agreement is made and entered into by and between the Hutchison County Sheriff's Office, hereinafter called Sheriff's Office, and the Prosecuting Attorney of Carson County, Texas, hereinafter referred to as Prosecuting Attorney. This agreement applies only in those situations when both parties hereto participate in the seizure of contraband. In all other situations, separate written agreements will apply.

Pursuant to the provisions of Chapter 59 of the Texas Code of Criminal Procedure, enacted by the 71st Legislature, First Called Session, 1989, which said enactment deals with disposition of forfeited property and contraband seized by law enforcement officers, the Sheriff's Office and Prosecuting Attorney desire to enter into an agreement regarding the disposition of said forfeited contraband.

This agreement is entered into by and between the respective parties hereto and is predicated upon the mutual consideration of the quotable sharing of the value of the contraband and the contraband itself, seized pursuant to the appropriate state statutes. Accordingly, inasmuch as said statutes require that an agreement exist between the State and law enforcement agencies which seize said property and in furtherance of that statutory purpose, it is the intention of said parties to herewith enter into an agreement with regard to disposition of said property.

In consideration of the services for the Sheriff's Office, associated with and relating to the forfeiture of the said contraband, rendered to the said Sheriff's Office by the Prosecuting Attorney, it is agreed that 50% of all money forfeited and 50% of the final sum received from the sale of real estate or other property, not otherwise disposed of by this agreement, shall be retained by the Prosecuting Attorney to be used for the official purposes of his office. It is agreed that the Sheriff's Office shall be permitted to retain 50% of all proceeds of real estate and

800 WEST AVENUE, BOX 1, WELLINGTON, TEXAS 79095
(806) 447-0055     (866) 233-2738 FACSIMILE

SERVING CARSON, CHILDRESS, COLLINGSWORTH, DONLEY AND HALL COUNTIES

49.     Pursuant to provisions of Chapter 59 of the Texas Code of Criminal Procedure, which regulates the disposition of property forfeited to the State of Texas as contraband, the Texas Department of Public Safety, the District Attorney's Office of the

100th Judicial district and Carson County Sheriff's Office entered into an agreement regarding the disposition of said property or the proceeds from the sale thereof.

50.    Per the agreement, **the 100th Judicial District received 50% of all money forfeitures**.



CID-15d (Rev. 09/17)

**Asset Forfeiture**
**Local Agreement with Multiple Parties**

STATE OF TEXAS
COUNTY OF Carson, Childress, Hall and Donley

Pursuant to the provisions of Chapter 59 of the Texas Code of Criminal Procedure, which regulates the disposition of property forfeited to the State of Texas as contraband, the Texas Department of Public Safety ("DPS"), the District Attorney's Office of the 100th Judicial District (referred to herein as "the Attorney Representing the State"), and Carson County Sheriff's Office (referred to herein as "the law enforcement agency" or "LEA") enter into this agreement ("Agreement") regarding the disposition of said property or the proceeds from the sale thereof. DPS, the Attorney Representing the State, and LEA are collectively referred to in this Agreement as the "Parties."

**I. Forfeiture Allocations**

The LEA identified herein seized forfeited property concurrently with DPS or participated in a significant manner. In consideration of the services rendered by the Parties to this Agreement for the seizure and forfeiture of the contraband in a proceeding under Article 59.05, the Parties agree to allocate the forfeited property or the proceeds from the sale thereof as follows, after the deduction of applicable court costs:

## Chief Policy Maker Luke Inman

51.    At all times relevant to the subject matter of this litigation, Defendant Teichelman was an employee of the 100th Judicial District's Traffic Enforcement Division who was following policies and practices of the 100th Judicial District.

52.    Defendant Teichelman joined the team as Traffic Enforcement Investigator "cracking down on drugs and US currency derived from the illegal narcotics trade."[2]

53.    Upon information and belief, at all times relevant to the subject matter of this litigation, Luke Inman was the chief policy maker for the 100th Judicial District's Traffic Enforcement Division as the "Attorney Representing the State" and as the official for the 100th Judicial District who created the Traffic Enforcement Division.

---

[2] https://www.clarendonlive.com/?p=25619

54.    Upon information and belief, as Attorney Representing the State, Inman had full and complete authority to enter into and execute local asset forfeiture agreements with surrounding law enforcement agencies to further the 100th Judicial District's goal of profiting off civil forfeitures.

55.    Pursuant to these local asset forfeiture agreements, if money is seized, Defendant Inman as Attorney Representing the State shall, before disposition in accord with the agreements, handle such funds in accordance with applicable statutes.

56.    Below is a screen capture from an asset forfeiture agreement executed in March of 2017, where Inman, as Attorney Representing the State, entered into a signed agreement with the Randall County Sheriff's Office and Texas Department of Public Safety.

K.  The signatory for the Attorney Representing the State and LEA hereby represent and warrant that they have full and complete authority to execute this Agreement.

Law Enforcement Agency

_____
Authorized Official from LEA
Randall County Sheriff's Office

Date:  3/23/17

Texas Department of Public Safety:

_____
Director or his/her Designee

Attorney Representing the State:

_____
Luke Inman          , District Attorney
100th               Judicial District

Date:  3/23/2017

57.    Below is a screen capture from an asset forfeiture agreement executed in April of 2017, where Inman, as Attorney Representing the State, entered into a signed agreement with the Randall County Sheriff's Office and Texas Department of Public Safety.

K. The signatory for the Attorney Representing the State and LEA hereby represent and warrant that they have full and complete authority to execute this Agreement.

Law Enforcement Agency

*Authorized Official from LEA*

Randall County Sheriff's Office

Date: _____

Texas Department of Public Safety:

*Director or his/her Designee*

Attorney Representing the State:

Luke Inman    , District Attorney
100th    Judicial District

Date: _____

Page 4 of 5

58.     Below is a screen capture from an asset forfeiture agreement executed in September of 2018, where Inman, as Attorney Representing the State, entered into a signed agreement with the Randall County Sheriff's Office, Potter County Sheriff's Office and Texas Department of Public Safety.

| Gary Albus | Luke Inman |
|---|---|
| Regional Director | District Attorney |
| Texas Department of Public Safety | 100th _____ Judicial District |
| Address: | Address: |
| 1404 Lubbock Bus. Park Blvd Ste #100 | 800 West Avenue, PO Box 1 |
| Lubbock, TX 79403 | Wellington, TX 79095 |
| Facsimile:   (806) 740-8713 | Facsimile:   (866) 233-2738 |
| E-Mail:  gary.albus@dps.texas.gov | E-Mail:  luke.inman@windstream.net |

| Randall County Sheriff's Office | Potter County Sheriff's Office |
|---|---|
| Law Enforcement Agency | Law Enforcement Agency |
| Address: | Address: |
| 9100 S. Georgia | 13103 NE 29th Avenue |
| Amarillo, TX 79118 | Amarillo Texas 79111 |
| Facsimile:   (806) 468-5776 | Facsimile:   (806) 379-2919 |
| E-Mail:  sheriff@rc-sheriff.com | E-Mail:  brianthomas@co.potter.tx.us |

K. The signatory for the Attorney Representing the State and LEA hereby represent and warrant that they have full and complete authority to execute this Agreement.

Law Enforcement Agency:                           Law Enforcement Agency:

_____ Chief Deputy            _____
Authorized Official from LEA                     Authorized Official from LEA
Randall County Sheriff's Office                  Potter County Sheriff's Office

Date:  09-13-2018                                 Date:  9-13-18

Texas Department of Public Safety:               Attorney Representing the State:

59.    Upon information and belief, at all times relevant to the subject matter of this litigation, these signed agreements show that Inman was the official policy maker for the 100th Judicial District since as the "Attorney Representing the State," he possessed full and complete authority to execute such agreements.

60.    In a news article, Inman is quoted as stating his team "is considered small, even though their caseload surpasses most districts across the Panhandle."[3]

61.    According to Inman, "the most impressive part of this team is our reputation for obtaining large sentences against offenders."[4]

---

[3] Id.
[4] Id.

62.    Inman explained he likes using drug traffickers' property and money to support local needs, taking the tax burden away from citizens.[5]

63.    According to the article each year, Inman uses hundreds of thousands of forfeited property and money from drug dealers to protect law enforcement and better equip them.[6]

64.    Inman is also known for assessing staunch fines against the criminal contingent, which brings in millions of dollars each year.[7]

65.    According to Inman, "We are pro law enforcement and pro seizure of criminals' assets. At the end of the day, we're known for our reputation of getting tough sentences against wrongdoers." [8]

66.    Inman is quoted in another article stating "this chapter [Chapter 59] allows individuals engaged in the illegal narcotics trade to actually pay for unique items that benefit law enforcement and protect all of us tax-paying citizens. Drug dealers don't pay taxes, so the fact that we have an avenue to seize their property and put it to good use, especially in this case, is an amazing tool and asset that the great State of Texas affords all district attorneys."[9]

67.    At the time of this article, the DA's office and the DPS had a sharing agreement to split proceeds 70/30 after property is sold at auction.[10]

_____

[5] Id.
[6] Id.
[7] Id.
[8] Id.
[9] https://www.newschannel10.com/2019/05/16/area-drug-bust-leads-new-mobile-command-unit-texas-rangers/
[10] Id.

68.    However, Inman stated they were forgoing the monetary value to benefit the department.[11]

69.    Upon information and belief, Inman as official policy maker for the 100th Judicial District instituted the practice and custom of having his Traffic Enforcement Division illegally prolong detentions for the purpose of searching vehicles to seize assets to pay for "unique items that benefit law enforcement."

70.    Inman is on record stating that seizure of assets by the 100th Judicial Traffic Enforcement Division requires a criminal charge but **does not** require a conviction.[12]

71.    Therefore, even if the constitutionality of the seizure was successfully challenged in subsequent criminal proceedings, the 100th Judicial District still had the ability to seize assets as a result of civil forfeiture proceedings even if citizens were unconstitutionally subjected to prolonged detentions after the purposes of traffic stops had concluded.

72.    The following are instances where after consent was denied the seizing officer called a K-9 unit to prolong detentions after the purposes of the traffic stops had concluded pursuant to the 100th Judicial District's unconstitutional pattern and practice.

### **Case Number 11,376**

73.    On April 10, 2014, Danny Dawson employed as a peace officer with the 100th Judicial District Attorney's Office seized a 1997 Honda Accord after Dawson conducted a traffic stop on Anthony Portillo for driving on improved shoulder and failure to signal lane change. Dawson asked for consent to search the vehicle which was denied by Portillo. Although the purposes of the traffic stop had concluded Dawson the proceeded to allow a

---

[11] Id.
[12] https://abc7amarillo.com/news/local/an-explainer-to-civil-asset-forfeitures

K-9 to conduct a free-air sniff. The K-9 allegedly made a positive alert on the vehicle. During the search approximately 4.20 pounds of methamphetamine was located in a windshield cowling of the vehicle.

### Case Number 11515

74.    On February 4, 2015, Danny Dawson employed as a peace officer by the 100th Judicial District Attorney's Office seized a 2003 Fleetwood RV after conducting a traffic stop for driving on improved shoulder and failure to drive in single lane on David Paul Diaz. Dawson asked for consent to search the vehicle which was denied by Diaz. Although the purposes for the traffic stop had concluded, a K-9 Unit was called to the scene and conducted a free-air sniff. The K-9 allegedly made a positive alert to the vehicle. A search of the vehicle was conducted. During the search 90 pounds of marijuana was located in the closets of the vehicle.

### Case Number 11607

75.    On August 24, 2015, Danny Dawson employed as a peace officer by the 100th Judicial District seized a 2004 Chrysler 300 after conducting a traffic stop for failure to signal lane change and no driver's license on David J Torres. Dawson asked for consent to search the vehicle which was denied by Torres. Although the purposes for the traffic stop had concluded, a K-9 Unit was called to the scene and conducted a free-air sniff. The K-9 allegedly made a positive alert to the vehicle. A search of the vehicle was conducted due to the positive alert. During the search, 0.82 pounds of heroin was located in the trunk lining of the vehicle.

### Case Number 11608

76.    On August 26, 2015, Danny Dawson employed by the 100th Judicial District Attorney's Office seized $460,150.00 in Currency and a 2005 Chrysler Pacifica after

Dawson conducting a traffic stop for following too close and failure to signal lane change on driver Hassan McElwain and passenger Sonia Torres. Dawson asked for consent to search the vehicle, which was denied by McElwain and Torres. Although the purposes for the traffic stop had concluded, a K-9 Unit was called to the scene and conducted a free-air sniff. The K-9 allegedly made a positive alert to the vehicle. A search of the vehicle was conducted. During the search $460,000.00 in currency was located in a false floor compartment in the vehicle.

## Case Number 11936

77.    On April 18, 2017, Danny Dawson employed by the 100th Judicial District Attorney's Office seized a 2007 Honda Ridgeline after conducting a traffic stop on driver Hector Rene Nevarez and passenger Martin Norberto Castaneda for following too close. Consent to search the vehicle was denied. Although the purposes for the traffic stop had concluded, Dawson allowed a K-9 Unit to conduct a free air sniff of the vehicle. The K-9 allegedly made a positive alert to the vehicle. A search of the vehicle was conducted. During the search 15.86 pounds of methamphetamine was found in between the rear seat and back wall of the vehicle.

## Case Number 7926

78.    On January 10, 2019, Coy Teichelman employed as a peace officer by the 100th District Attorney's Office seized a 2017 Chevrolet Tahoe and $50,000.00 in Currency after conducting a traffic stop for speeding and failure to signal lane change on Marcos Arreaga Villa and Juvenal Gamino Segunda. Teichelman asked for consent to search the vehicle which was denied. Although the purposes for the traffic stop had concluded, s K-9 Unit was called to the scene. The K-9 allegedly made a positive alert to

the vehicle. During the search, Currency was located in the lining of a diaper bag and the center console of the vehicle.

## Case Number 7960

79.    On April 18, 2019, Coy Teichelman employed as a peace officer by the 100th District Attorney's Office seized a 2004 Lincoln Continental after conducting a traffic stop for following too closely on Thomas H. Ciccil. Teichelman asked for consent to search the vehicle which was denied by Ciccil. Although the purposes for the traffic stop had concluded, a K-9 Unit was called to the scene. The K-9 allegedly made a positive alert to the vehicle. A search was conducted on the vehicle. During the search 100 pounds of marihuana and 3 pounds of THC was located in the trunk of the vehicle.

## Case Number 12393

80.    On August 14, 2019, Coy Teichelman employed as a peace officer by the 100th District Attorney's Office seized a 2018 Honda Clarity and $i89,056.00 in Currency after conducting a traffic stop on driver Husing Vang and passenger Crystal Lee for speeding and following too close. Teichelman asked for consent to search the vehicle which was denied by Vang and Lee. Although the purposes for the traffic stop had concluded, a K-9 unit was called to the scene and allegedly made a positive alert to the vehicle. A search was conducted on the vehicle. During the search, Currency was located in a black backpack laying on the back driver side floor of the vehicle.

## Case Number 12410

81.    On September 8, 2019, Coy Teichelman employed as a peace officer by the 100th District Attorney's Office seized $508,100.00 in Currency after conducting a traffic stop for speeding and failure to drive in single lane on driver Mark Allen Randell and passenger Peter Judge Randell. Teichelman asked for consent to search the vehicle which

was denied by M. Randell and P. Randell. Although the purposes for the traffic stop had concluded, a K-9 Unit was called to the scene and allegedly made a positive alert to the vehicle.  A search was conducted. During the search, Currency was located in a red duffel and a silver suitcase that was located in the rear cargo area of the vehicle. Currency was also found in a leather pouch that was hidden in a natural void in the floor of the back passenger area of the vehicle. The Currency was rubber banded with different rubber bands and in different denominations. The K-9 made a positive alert to the Currency.

## Case Number 12417

82.     On September 27, 2019, Coy Teichelman employed with the 100 District Attorney's Office seized $554,850.00 in Currency after conducting a traffic stop on Justin Thomas Burnett for failure to signal lane change and following too close. Teichelman asked for consent to search the vehicle which was denied by Burnett. Although the purposes for the traffic stop had concluded, a K-9 Unit was called to the scene and allegedly made a positive alert to the vehicle. A search was conducted of the vehicle. During the search, Currency was located in a large gray and black duffle bag and was separated in different back packs and postal boxes and plastic bags located in the vehicle. Currency was vacuum-sealed and rubber banded in different denominations.

## Case Number 12438

83.     On October 31, 2019, Coy Teichelman employed as a peace officer by the 100th District Attorney's Office seized a 2015 Mercedes Benz CLA and $38,420.00 in Currency after conducting a traffic stop for following too closely and failure to signal lane change on driver Colin Ray Dotters and passenger Jessica Elora Jewell. Teichelman asked for consent to search the vehicle which was denied by Dotters and Jewell. Although the purposes for the traffic stop had concluded, a K-9 Unit was called to the scene and

allegedly made a positive alert to the vehicle. A search was performed on the vehicle. During the search, Currency was located in a black backpack, rubber branded and in different denominations located in the trunk of the vehicle. Teichelman also located four vials of THC, a glass jar of THC wax, and marihuana in a black case all located in the center console of the vehicle.

## Case Number 12455

84.    On December 5, 2019, Danny Dawson employed as a peace officer with the 100th District Attorney's Office seized a 2010 Lexus RX 350 after conducting a traffic stop on Reynaldo Barron-Ortiz for following too closely. Dawson asked for consent to search the vehicle which was denied by Barron-Ortiz. Although the purposes for the traffic stop had concluded, a K-9 unit was called to the scene allegedly and made an alert to the vehicle. A search was conducted on the vehicle. During the search of the vehicle, approximately 205 pounds of marijuana was located in suitcases in the rear cargo area of the vehicle and in the spare tire compartment of the vehicle.

## Case Number 12522

85.    On March 4, 2020, Coy Teichelman employed as a peace officer by the 100th District Attorney's Office seized a 2008 Nissan Titan and $199,770.00 in Currency after conducting a traffic stop for failure to signal lane change and obscured license plate on driver Jerald S Kemp Jr. and passenger Brandon T Bevis. Teichelman asked for consent to search the vehicle which was denied by Kemp Jr. And Bevis. Although the purposes for the traffic stop had concluded, a K-9 unit was called to the scene allegedly and made an alert to the vehicle. A search was conducted on the vehicle. During the search Currency was located in a green camo bag laying in the back seat of the vehicle and one bundle was

located in Bevis personal property. Currency was rubber banded and in different denominations.

### Case Number 12563

86.    On June 23,2020 Danny Dawson employed as a peace officer by the 100th District Attorney's Office seized a 2015 Chevrolet Traverse after conducting a traffic stop for following too closely on Jose Alberto Colin Contreras. Dawson asked for consent to search the vehicle which was denied by Contreras. Although the purposes for the traffic stop had concluded, a K-9 unit was called to the scene allegedly and made an alert to the vehicle. A search was conducted on the vehicle. During the search, 49 pounds of marihuana was located in the rear cargo area of the vehicle.

### Case Number 11148

87.    On August 5, 2020, Coy Teichelman employed as a peace officer by the 100th District Attorney's Office seized $44,220.00 in Currency after conducting a traffic stop for following too closely and failure to signal lane change on Brandon Scott Rutherford. Teichelman asked for consent to search the vehicle which was denied by Rutherford. Although the purposes for the traffic stop had concluded, a K-9 unit was called to the scene allegedly and made an alert to the vehicle. A search was conducted on the vehicle. During the search, the Currency was located in a red bag located in the trunk of the vehicle. There was a black empty duffle bag with the raw odor of marihuana emitting from it.

### Case Number 12546

88.    On January 26, 2020, Coy Teichelman employed as a peace officer by the 100th District Attorney's Office seized $205,415.00 in Currency after conducting a traffic stop for speeding and left lane not passing on driver Jerrery Kyle Novak and passenger

Tony Levell Perry. Teichelman asked for consent to search the vehicle which was denied by Novak and Perry. Although the purposes for the traffic stop had concluded, a K-9 unit was called to the scene allegedly and made an alert to the vehicle. A search was conducted on the vehicle. During the search Currency was located in a black backpack in the back seat located in the vehicle. Currency was rubber banded in different denominations and in vacuum sealed bags with fabric softener.

89.    The following are cases where the seizing officer conducted a search not supported by a warrant, reasonable suspicion, probable cause, nor consent.

## Case Number 11818

90.    On October 5, 2016, Danny Dawson employed as a peace officer by the 100th Judicial District Attorney's Office seized a 2004 Jeep Cherokee after conducting a traffic stop for following too closely on driver Andres Jose Pule and passengers Nicolas Waditjh Bardawil Jr., Dawson alleged he had probable cause to search the vehicle but did not pinpoint specific facts indicating a crime had been committed or was in the process of being committed. Dawson simply stated he had probable cause as justification for performing the search. During the search, fifty-five grams of cocaine, eighty two grams of mushrooms, and thirty four grams of THC wax were located in a back pack found in the vehicle.

## Case Number 12098

91.    On January 24, 2018, Danny Dawson employed as a peace officer by the 100th Judicial District Attorney's Office seized a 2002 Chevrolet Avalanche after he conducted a traffic stop for following too closely and no valid driver's license. Dawson alleged he had probable cause to search the vehicle but did not pinpoint specific facts indicating a crime had been committed or was in the process of being committed. Dawson

simply stated he had probable cause as justification for performing the search. During the search, one hundred and fifty four pounds of marihuana was located under a tarp in the vehicle.

## Case Number 10901

92.    On August 18, 2018, Coy Teichelman employed as a peace officer by the Childress Police Department seized a 2011 Chevrolet Aveo after conducting a traffic stop for impeding traffic and failure to maintain a single lane of traffic on driver Ulises Pomel and passenger Jose Alberto Guerra Menendez. Teichelman alleged he had probable cause probable cause to search the vehicle but did not pinpoint specific facts indicating a crime had been committed or was in the process of being committed. Dawson simply stated he had probable cause as justification for performing the search. During the search of the vehicle, four pounds of marihuana was located in the trunk of the vehicle.

## Case Number 7924

93.    On January 4, 2019, Danny Dawson employed as a peace officer by the 100th Judicial District Attorney's Office seized a 2012 Toyota Sienna and $30,000.00 in Currency after conducting a traffic stop for passenger not wearing a seatbelt on driver Li Tian and passenger Samuel Bian. Dawson alleged he had probable cause to search the vehicle but did not pinpoint specific facts indicating a crime had been committed or was in the process of being committed. He simply stated he had probable cause as justification for searching the vehicle. During the search, Currency was located in the lining of a suitcase located in the vehicle.

## Case Number 12330

94.    On March 20, 2019, Coy Teichelman employed as a peace officer by the 100th Judicial District Attorney's Office seized a 2003 Chevrolet 3500 Pickup and

$54,431.00 in Currency after conducting a traffic stop for following too closely and speeding on driver Rebecca Jean Marinan and passenger Olivia R. Watkins. Teichelman alleged he had probable cause to search the vehicle but did not pinpoint specific facts indicating a crime had been committed or was in the process of being committed. He simply stated he had probable cause as justification for searching the vehicle. During the search one ounce of marihuana and three grams of THC were located under the center console of the vehicle.

95.    These examples show that the 100th Judicial District through its Traffic Enforcement Division being run by Luke Inman had a pattern and practice of illegally prolonging detentions to perform illegal searches for the purpose of seizing property, currency, and contraband to be forfeited to the 100th Judicial District as a profit.

96.    This pattern and practice was the moving force behind the illegally prolonged detention of Mr. Weisshaus and the illegal search of his vehicle.

97.    Although nothing was illegal was found in his vehicle or seized, he still suffered the constitutional violations caused by these unconstitutional practices of the 100th Judicial District.

**IV.**
**CAUSES OF ACTION**

**Illegal Detention**
**Against Defendant Teichelman**
**Pursuant to the Fourth Amendment and 42 U.S.C § 1983**

98.    Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

99.    No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, to

be free from all restraint or interference of others, unless by clear and unquestionable authority of law. *Terry v. Ohio*, 392 U.S. 1, 9 (1968).

100.    Defendant Teichelman deprived Mr. Weisshaus of his constitutionally protected right to be free from unreasonable searches and seizures under the Fourth Amendment by unlawfully detaining him despite lacking reasonable suspicion that any crime had been committed as the reason for the detention had already been exhausted when Defendant Teichelmen gave Mr. Weisshaus a warning and advised him he was free to leave.

101.    Unlawful detention implicates the Fourth Amendment's proscription against unreasonable seizures. *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 845 (5th Cir. 2009) See *Terry*, 392 U.S. at 16 ("[W]henever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person.").

102.    Traffic stops are considered seizures within the meaning of the Fourth Amendment. *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979); *United States v. Valadez*, 267 F.3d 395, 397 (5th Cir.2001).

103.    The legality of a traffic stop is analyzed under the framework articulated in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). See *Knowles v. Iowa*, 525 U.S. 113, 117, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998); *Berkemer v. McCarty*, 468 U.S. 420, 439, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984); *United States v. Brigham*, 382 F.3d 500, 506 (5th Cir.2004) (en banc).

104.    Under the two-part Terry reasonable suspicion inquiry, the court must determine whether the officer's action was: (1) "justified at its inception"; and (2) "reasonably related in scope to the circumstances which justified the interference in the

first place." *Terry*, 392 U.S. at 19–20; *Brigham*,  at 506–507; *U.S. v. Lopez–Moreno*, 420 F.3d 420, 429–434 (5th Cir.2005).

105.    For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle. See *United States v. Breelan*d, 53 F.3d 100, 102 (5th Cir.1995).

106.    The Supreme Court has stated that in making a reasonable suspicion inquiry, a court "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002); *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).

107.    Reasonable suspicion exists when the officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the search and seizure. See, e.g., *United States v. Santiago*, 310 F.3d 336, 340 (5th Cir.2002).

108.    In evaluating the totality of the circumstances, a court may not consider the relevant factors in isolation from each other. *Arvizu*, 534 U.S. at 274.

109.    In scrutinizing the officer's basis for suspecting wrongdoing, it is clear that the officer's mere hunch will not suffice. *Terry*, 392 U.S. at 27.

110.    It is also clear, however, that reasonable suspicion need not rise to the level of probable cause. *Arvizu*, 534 U.S. at 274.

111.    As for the second prong of the Terry inquiry, generally, the "detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop,

unless further reasonable suspicion, supported by articulable facts, emerges." *Brigham*, 382 F.3d at 507.

112.    In the course of effectuating the stop, a police officer may permissibly examine the driver's license and registration and run a computer check on them to investigate whether the driver has any outstanding warrants and if the vehicle is stolen. *Id.* at 507–08.

113.    An officer may also ask the driver about the purpose and itinerary of his trip. *Id.* at 508.

114.    Indeed, the officer's questions need not even be related to the purpose of the traffic stop, since "[d]etention, not questioning, is the evil at which Terry's second prong is aimed." *Id.*

115.    **Although an officer's inquiry may be wide-ranging, once all relevant computer checks have come back clean, there is no more reasonable suspicion, and, as a general matter, continued questioning thereafter unconstitutionally prolongs the detention.** *Brigham*, 382 F.3d at 510. See also *Santiago*, 310 F.3d at 341–42; *United States v. Jones*, 234 F.3d 234, 241 (5th Cir.2000).

116.    A recognized exception to this rule is that if additional reasonable suspicion arises in the course of the stop and before the initial purpose of the stop has been fulfilled, then the detention may continue until the new reasonable suspicion has been dispelled or confirmed. See *Brigham*, 382 F.3d at 507; *United States v. Grant*, 349 F.3d 192, 196 (5th Cir.2003).

117.    To prevail on a claim for unlawful seizure a plaintiff must allege facts that if true show that the defendant police officer lacked reasonable suspicion to detain or probable cause to arrest the Plaintiff. *Connors v. Graves*, 538 F.3d 373, 377 (5th Cir.

2008) (discussing showing of no probable cause with respect to claim for unlawful seizure); *Haggerty*, 391 F.3d at 655.

118.    Under Terry, an officer may temporarily detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot. See *Illinois v. Wardlaw*, 528 U.S. 119, 123-24, 120 S. Ct. 673, 145 L. Ed. 2d 570 (2000) (reiterating that reasonable suspicion is ―more than an ‗inchoate and unparticularized suspicion or hunch‗ of criminal activity‖); *United States v. Sokolow*, 490 U.S. 1, 7, 104 L. Ed. 2d 1, 109 S. Ct. 1581 (1989); *United States v. Jones*, 234 F.3d 234, 241 (5th Cir. 2000).

119.    The suspicion required to justify such a detention need not rise to the level of probable cause but must be based on more than an unparticularized suspicion or hunch. *Jones*, 234 F.3d at 241.

120.    The Court must determine whether the search and seizure was reasonably related, in scope, to the circumstances that justified the stop in the first place. *Kothe v. State,* 152 S.W.3d 54, 62 (Tex. Crim. App. 2004).

121.    In making this determination the scope of a *Terry* investigative stop can last no longer than necessary to effect the purpose to stop. *See id.*

122.    As a component of the initial stop the officer has authority to conduct a driver's license and warrant check. *See id.*

123.    After completion of the purposes of the initial stop, the officer must have reasonable suspicion to believe that further criminal activity has occurred or is being committed to justify further detention of the suspect. See *Davis v. State*, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997) (en banc); *McQuarters v. State*, 58 S.W.3d 250, 255 (Tex.

App.—Fort Worth 2001, pet. ref'd;  *Sieffert v. State*, 290 S.W.3d 478, 485–86 (Tex. App.—Amarillo 2009, no pet.).

124.    In order words, once the original purpose for the stop is exhausted, police may not unnecessarily detain drivers solely in hopes of finding evidence of some other crime. *Kothe*, 152 S.W.3d at 64.

125.    For example, in *Davis*, after an officer determined that the driver was not intoxicated—the basis for the original stop—and completed the driver's license check and criminal history check, the officer continued to detain Davis because he did not look like someone traveling on a business trip. *Davis,* 947 S.W.2d at 245.

126.    However, in *Davis*, the Texas Court of Criminal Appeals stated this conclusion was not based upon any articulable facts, that taken together with reasonable inferences from those facts, would provide reasonable suspicion that continued detention was warranted. *Id.*

127.    For example, in *McQuarters*, a driver was stopped because the officer felt the driver was either falling asleep at the wheel or was intoxicated after observing his slow speed and the fact that the car drifted out of its lane on a couple of occasions. *McQuarters,* 58 S.W.3d at 253.

128.    Yet, an interview with the driver dispelled the notion he was intoxicated. *Id.*

129.    Eventually after issuing the warning tickets, the officer asked if there was anything of an "illegal nature" in the car. *Id.*

130.    The driver answered no, and the officer asked for consent to search, which was refused. *Id.*

131.    At that point in time the officer just "felt like" he had reasonable suspicion that the driver had narcotics in the vehicle. *Id.*

132.    Therefore, the officer continued detention until a K-9 unit could be brought to the site. *Id.*

133.    The K-9 unit alerted to the vehicle and nine to ten pounds of marihuana were found in the trunk. Id.

134.    Based on upon those facts, the Fort Worth Court of Appeals held that, when considering the totality of the circumstances, including the officer's personal experience, reasonable suspicion that the driver was hiding narcotics in the car could not be rationally inferred from these facts. *Id.* at 257

135.    See *Thompson v. State*, 408 S.W.3d 614, 625 (Tex.App.-Austin 2013, no pet.) (disagreeing with officer's characterization of appellants account of trip as "confused" and observing that simply because officer calls story confusing does not make it so).

136.    After the reason for the stop had concluded, Defendant Teichelman intentionally detained Plaintiff without a warrant, without Plaintiff's consent, and without any legal justification as Defendant Teichelman told Mr. Weisshaus he was not free to leave, and Mr. Weisshaus was not allowed back in his vehicle, despite already being issued a warning and being told he was free to leave.

137.    Plaintiff did not consent to his confinement and was conscious of it.

138.    Defendant Teichelman did not have probable cause nor reasonable suspicion to support detaining Plaintiff, after the purposes of the traffic stop had concluded as Mr. Weisshaus was not suspected of committing a crime or in the process of committing a crime when he was instructed not to leave.

139.    By knowingly and intentionally detaining Plaintiff without consent, without probable cause, and without legal justification, Defendant Teichelman deprived Plaintiff of his Fourth Amendment right to be free from unreasonable seizures.

140.    As a result of the illegal detention, Plaintiff suffered injuries.

141.    As a result of the illegal detention, Defendant Teichelman deprived Plaintiff of his civil, constitutional, and statutory rights and is liable to Plaintiff under 42 U.S.C. § 1983.

142.    Plaintiff was damaged as a result of Defendant Teichelman's wrongful acts.

## Count Two

### Illegal Search
### Against Defendant Teichelman
### Pursuant to the Fourth Amendment and 42 U.S.C § 1983

143.    Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

144.    The Fourth Amendment to the United States Constitution guarantees people the right to be free from unreasonable searches and seizures. U.S. Const. amend. IV.

145.    A search under the Fourth Amendment occurs when a governmental employee or agent of the government violates an individual's reasonable expectation of privacy.

146.    A search will not be deemed unreasonable if it is done pursuant to a valid warrant, based upon a finding of probable cause, or if the search falls within an exception to these requirements.

147.    A search will not be deemed unreasonable if it is done with valid consent.

148.    Defendant Teichelman, acting under color of law, was a governmental employee.

149.    Defendant Teichelman did not have a valid warrant to search Plaintiff's vehicle.

150.    Defendant Teichelman did not have probable cause to search Plaintiff's vehicle as Defendant Teichelman was not aware of any facts that evidence of a crime would be found inside of the vehicle as the reason for the stop was due to traffic offenses and no new information of criminal activity arose during the detention.

151.    Defendant Teichelman did not have consent to search Plaintiff's vehicle as Mr. Weisshaus expressly denied consent to search.

152.    No other exception permitted Defendant Teichelman to search Plaintiff's vehicle.

153.    Defendant Teichelman conducted an illegal search of Plaintiff's vehicle.

154.    Defendant Teichelman did not have authority of law to search Plaintiff's vehicle.

155.    By knowingly and intentionally searching Plaintiff's vehicle without consent, without probable cause, and without legal justification, Defendant Teichelman deprived Plaintiff of his Fourth Amendment right to be free from unreasonable searches.

156.    As a result of the illegal search, Plaintiff suffered injuries.

157.    As a result of the illegal search, Defendant Teichelman deprived Plaintiff of his civil, constitutional, and statutory rights and is liable to Plaintiff under 42 U.S.C. § 1983.

158.    Plaintiff was damaged as a result of Defendant Teichelman's wrongful acts.

### Count Three

### Causes of action against Defendant 100th Judicial District under *Monell v. New York City Department of Social Services* Violation of the Fourth Amendment Pursuant to 42 U.S.C § 1983

159.    Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

160.    Under the decisions of the Supreme Court and [the Fifth Circuit], municipal liability under section 1983 requires proof of three elements: a policy maker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell*, 436 U.S. at 694).

161.    Municipalities and other local governments are "persons" within the meaning of Section 1983 and can therefore be held liable for violating a person's constitutional rights. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978).

162.    A municipality "cannot be liable for an unwritten custom unless '[a]ctual or constructive knowledge of such custom' is attributable to a city policymaker." *Pena v. City of Rio Grande City*, 879 F.3d 613, 623 (5th Cir. 2018) (citing *Hicks–Fields v. Harris Cty.*, 860 F.3d 803, 808 (5th Cir. 2017)).

163.    To establish municipal liability under § 1983 based on an alleged "persistent widespread practice or custom that is so common it could be said to represent municipal policy, actual or constructive knowledge of such practice or custom must be shown." *Malone v. City of Fort Worth*, 297 F. Supp. 3d 645, 654 (N.D. Tex. 2018) (citing *Hicks–Fields*, 860 F.3d at 808).

164.    Constructive knowledge may be attributed to the governing body on the ground that it would have known of the violations if it had properly exercised its responsibilities…" *Hicks–Fields*, 860 F.3d at 808,

POLICYMAKER

165.    The identification of policymaking officials is a question of state law. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988).

166.    Luke Inman is and was the policymaker for the 100th Judicial District with regard to the Traffic Enforcement Division as he is the official for the 100th Judicial District who created the Traffic Enforcement Division.

167.    Inman was directly involved with implementing each of the 100th Judicial District Traffic Enforcement Division's policies and practices, including but not limited to actions taken to prolong traffic stops past when the purposes for the stop had concluded in order to illegally detain citizens and subject them to civil forfeiture proceedings; accordingly, he had actual knowledge of these unconstitutional policies and practices.

168.    Defendant Inman was directly involved with implementing each of the 100th Judicial District Traffic Enforcement Division's policies and practices as he entered into local asset forfeiture agreements regarding the disposition of property or proceeds derived by signing off on these agreements as "Attorney Representing the State."

169.    Inman had constructive knowledge of actions taken to prolong traffic stops past when the purposes for the stop had concluded in order to illegally detain citizens and subject them to civil forfeiture proceedings as Inman would have known of these practices in the 100th Judicial District Traffic Enforcement Division had he exercised his responsibilities, especially with regard to investigating civil forfeiture actions pursued against detainees.

170.    Inman had knowledge of these unconstitutional practices and policies as he submitted affidavits in each civil forfeiture case outlined above which included the seizing officer's Incident Reports in an attempt to prove each element of the civil forfeiture claims pursued by the 100th Judicial District and Inman was the official for the 100th Judicial District that reviewed, briefed, and argued the suppression issues related to these seizures in criminal cases and the forfeiture issues in civil matters.

<u>Policy, Custom, and Practice Which was Moving Force of Constitutional Violations</u>

171.    The § 1983 causation component requires that the plaintiff identify, with particularity, the policies or practices they allege cause the constitutional violation and demonstrate a "direct causal link." *M. D. by Stukenberg v. Abbott*, 907 F.3d 237, 255 (5th Cir. 2018); See *Piotrowski*, 237 F.3d at 580.

172.    Inman created a culture of constitutional violations through incentivizing officers to illegally prolong traffic stops past when the purposes for the stop had concluded in order to illegally search citizens and subject them to civil forfeiture proceedings in an effort to financially benefit the 100th Judicial District, knowing that the likely results would be violation of constitutional rights as he saw in the affidavits presented for each arrest and forfeiture.

173.    The violations of Plaintiff's constitutional rights under the Fourth Amendment to the United States Constitution, Plaintiff's damages, and the conduct of Defendant Teichelman were directly and proximately caused by the practices of the 100th Judicial District, under the direction of Luke Inman as chief policy maker of the 100th Judicial District Traffic Enforcement Division.

174.    Inman, as chief policy maker of the 100th Judicial District, knowing of this high likelihood of illegal detentions, and searches, which would result in violations of the

Fourth Amendment rights of its citizens, such as Mr. Weishauss was deliberately indifferent to the constitutional violations committed by officers working for the 100th Judicial District Traffic Enforcement Division, such as Defendant Teichelman in this case.

175.    The constitutional violations in this case were the direct result of the deliberate indifference outlined above by Luke Inman as chief policy maker of the 100th Judicial District Traffic Enforcement Division.

176.    At the time of the incident, Defendant Teichelman was acting pursuant to a custom, policy, practice, and/or procedure of the 100th Judicial District.

177.    Defendants' actions constitute a violation of the well-settled right to be free from unreasonable searches and illegal detention under the Fourth Amendment.

178.    As a direct result of these acts, Plaintiff has suffered mental/emotional injuries and economic damages.

179.    These injuries were not caused by any other means.

## V.
## Damages

180.    Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

181.    When viewed objectively from the standpoint of Defendant Teichelman, at the time of the occurrence, said Defendant's conduct involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others.

182.    Plaintiff's injuries were a foreseeable event. Those injuries were directly and proximately caused by the illegal detention and search of Mr. Weisshaus. As a result, Plaintiff is entitled to recover all actual damages allowed by law. Plaintiff contends Defendant's conduct constitutes malice, evil intent, or reckless or callous indifference to

Plaintiff's constitutionally protected rights. Thus, Plaintiff is entitled to punitive damages against the Defendant Teichelman.

183.    As a direct and proximate result of the occurrence which made the basis of this lawsuit, Plaintiff was forced to suffer:

    a.  Emotional distress, torment, and mental anguish; and

    b.  Deprivations of his liberty.

## VI.
## Attorneys' Fees

184.    If Plaintiff prevails in this action, by settlement or otherwise, Plaintiff is entitled to and hereby demands attorney's fees under 42 U.S.C. §1988.

## VIII.
## Jury Request

185.    Plaintiff respectfully requests a jury trial.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that judgment be rendered against Defendants, for an amount in excess of the jurisdictional minimum of this Court. Plaintiff further prays for all other relief, both legal and equitable, to which he may show himself justly entitled.

Respectfully submitted,

*/s/ Scott H. Palmer*
SCOTT H. PALMER,
Texas Bar No. 00797196

*/s/ James P. Roberts*
JAMES P. ROBERTS,
Texas Bar No. 24105721

SCOTT H. PALMER, P.C.
15455 Dallas Parkway, Suite 540

Addison, Texas 75001
Telephone: 214.987.4100
Facsimile: 214.922.9900
scott@scottpalmerlaw.com
james@scottpalmerlaw.com

COUNSEL FOR PLAINTIFF